UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL LEE WRIGHT,
On Behalf of Herself
and All Others Similarly Situated,

        Plaintiff,

                              Case No. 12-14446
v.                              Honorable Julian Abele Cook, Jr.

OCWEN LOAN SERVICING, LLC,

        Defendant.

## ORDER

This lawsuit involves the issue of whether the Defendant, Ocwen Loan Servicing, LLC ("Ocwen Loan") wrongfully encroached upon the rights of the Plaintiff, Carol Wright, by violating the terms and conditions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Ocwen Loan, in denying Wright's charges, has now filed a motion to dismiss, as authorized by Fed. R. Civ. P. 12(b)(6).

I.

In January of 2005, Wright received a loan from the Fremont Investment & Loan Company ("Fremont Investment") to purchase a home in Shelby Township, Michigan. In conjunction with this loan process, she executed a promissory note in the sum of $238,500.00 that was secured by a mortgage against her newly acquired property. This note was granted in favor of Mortgage Electronic Registration Systems, Inc. as the nominee for Fremont and its successors and assigns. In July 2005, her note was sold to Real Estate Mortgage Investment Conduit trust for which HSBC

Bank is the trustee. In June 2008, Litton Loan Servicing ("Litton") began servicing Wright's loan.

According to Ocwen Loan, foreclosure proceedings against Wright were initiated in May of 2009 after she defaulted on the contractual obligations of her note and the mortgage. On April 18, 2011, Mortgage Electronic assigned the mortgage to HSBC Bank which continued the foreclosure process under the guidance of its counsel, Trott & Trott, P.C. ("Trott"). In a challenge to the legitimacy of the foreclosure procedure, Wright filed a lawsuit in the Macomb County Circuit Court of Michigan on May 18, 2011. On November 4, 2011, Wright received a letter which informed her that Ocwen Loan had become the new servicer of her loan.

This letter also contained, among other things, (1) a summary of her existing debt obligations, and (2) the following advisory note: "This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose." The letter neither demanded the payment of any monies nor established a deadline with regard to the satisfaction of the loan. According to Wright, she forwarded a letter to Ocwen Loan, in which a verification of the claimed indebtedness was requested by her. She also acknowledges having received subsequent communications from Ocwen Loan, including phone calls and letters, wherein there was no explicit mention that it was a debt collector.[1]

On March 29, 2012, Wright's lawsuit challenging the foreclosure proceedings was dismissed with a finding that (1) HSBC Bank was the proper party to initiate foreclosure proceedings against her, and (2) the Fair Debt Collection Practices Act had not been violated. On October 26, 2012, Wright filed a second lawsuit against Ocwen Loan that is currently pending in this federal court.

---

[1]It is unclear whether Ocwen Loan ever verified the validity of Wright's debt, in that no such communication has been produced by either party to this lawsuit.

II.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court is encouraged to accept the plaintiff's well-pleaded allegations as being correct, and construes each of them in a light that is most favorable to its position. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a 12(b)(6) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also

may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

### III.

In her complaint, Wright points to the following acts of misconduct that, in her opinion, were committed by Ocwen Loan in violation of the Fair Debt Collections Practices Act; namely, it (1) sought to collect on her debt through the use of false representations or deceptive means in violation of 15 U.S.C. § 1692e(10); (2) attempted to communicate with her on numerous occasions without ever disclosing its status as a debt collector, in violation of 15 U.S.C. § 1692e(11), and (3) made an improper effort to collect monies that had not been previously authorized by the parties, in violation of 15 U.S.C. § 1692f(1). Wright contends that, notwithstanding Ocwen Loan's assertions, each of these violations fails to state a claim for which relief can be granted.

A.  Violation of § 1692e(10)

Wright alleges that Ocwen Loan violated § 1692e(10) of the Fair Debt Collections Practices Act with its letter of November 4, 2011. In its motion to dismiss, Ocwen Loan denies this accusation by Wright, arguing that even if this letter is interpreted as an attempt to collect a debt, such a claim

4

would be barred by the doctrine of res judicata. Moreover, Ocwen Loan insists that this letter only served to notify her of its status as the new servicer of her debt, as mandated by the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601-2617.[2]

To the extent that Ocwen Loan asserts that a communication which is mandated by a statute cannot be interpreted as an attempt to collect a debt, this argument must be rejected. A communication can have a dual purpose, in that it can (1) fulfill a statutory obligation, and (2) demand payment on a debt. *See, e.g.*, *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012). The cases cited by Ocwen Loan do not rebut this conclusion. In each case, the inquiry by the court did not end when it determined that the communication was statutorily mandated. Rather, the court also examined the content of the communication to determine if it was also an attempt to collect. *See Barton v. Ocwen Servicing LLC*, Civ. 12-162, 2012 WL 4449860, at *6 (D. Minn. Sept. 26, 2012) ("[T]he letter makes clear that if plaintiff had filed for bankruptcy the letter should not be considered an attempt to collect. . . ."); *In re Whitmarsh*, 383 B.R. 735, 736-37 (Bankr. D. Neb. 2008) ("A close review of the letters . . . reveals that none of those letters clearly constitutes a prohibited demand for payment."); *Chase Manhattan Mortg. Corp. v. Padgett*, 268 B.R. 309, 314-15 (S.D. Fla. 2001) (if letter had demanded payment, it would have violated automatic stay); *In re Hayward*, BR 11-20649, 2011 WL 3799768 (Bankr. D. Utah Aug. 26, 2011) (purely informational letters that do not attempt to collect debt do not violate stay). Accordingly, the content of the letter must be examined to determine whether it (1) merely provided information, or (2) was sent in connection with an attempt to collect a debt. *See Gburek v. Litton Loan Serv. LP*, 614 F.3d

---

[2] Real Estate Settlement Procedures Act of 1974 requires a loan servicer to "notify the borrower of any . . . assignment, sale, or transfer." 12 U.S.C. § 2605(c).

5

380, 385 (7th Cir. 2010) (Whether a communication was sent "in connection with" the collection of a debt is a question of objective fact, to be proven like any other fact).

Inasmuch as the Court has to resolve only the pending motion to dismiss, it must seek to determine if Wright's allegations - including the content of the letters attached to her complaint - are sufficient to survive the motion to dismiss. *Id.* at 386. "For a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). However, "'an explicit demand for payment is not always necessary for the statute to apply.'" *Id.* (quoting *Gburek*, 614 F.3d at 384-85). For example, "a letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection." *Id.*

As it is clear upon a review of the relevant case law, there is no "bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Gburek*, 614 F.3d 380, 384 (7th Cir. 2010). In fact, much of the case law is contradictory. For example, some courts have determined that if a letter does not contain terms of payment or deadlines, threaten further collection proceedings, or demand payment, it does not constitute an attempt to collect a debt. *See, e.g.*, *Gillespie v. Chase Home Finance, LLC*, 2009 WL 4061428, at *5 (N.D. Ind. Nov. 20, 2009); *Parker v. Midland Credit Mgmt.*, No. 8:12-CV-110-T-30TBM, 2012 WL 2226452 (M.D. Fla. June 15, 2012). On the other hand, other courts have determined that "telling a debtor that a certain amount is due on their account is an implicit demand for payment." *McDermott v. Randall S. Miller & Associates, P.C.*, 835 F. Supp. 2d 362, 371 (E.D. Mich. 2011); *Mielke v. Bank of Am. Home Loans Servicing LP*, No. 2:10-CV-11576, 2011 WL 1464848 (E.D. Mich. Apr. 18, 2011) ("Although not an explicit demand for payment, telling a

6

debtor that a certain amount is due on their account is an implicit demand for payment.").

. Moreover, some courts have held that a warning regarding the failure to pay or an offer to the debtor to contact the collector to discuss possible loan workout options does not constitute an attempt to collect a debt. *See, e.g.*, *Santoro v. CTC Foreclosure Service*, 12 F. App'x 476, 480 (9th Cir. 2001); *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998); *Gillespie,* 2009 WL 4061428*,* at *5*; Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 WL 21210115, at *3 (N.D. Ill. May 21, 2003). On the other hand, in *Gburek*, the Seventh Circuit reasoned that an offer to discuss repayment options "qualifies as a communication in connection with an attempt to collect a debt." 614 F.3d at 386; *see also McDermott v. Randall S. Miller & Associates, P.C.*, 835 F. Supp. 2d 362, 371 (E.D. Mich. 2011).

At least one court has attempted to create a list of the factors considered by the *Grden* and *Gburek* courts. *McDermott*, 835 F. Supp. 2d at 370-71. The *McDermott* court suggested that when determining whether a communication was made "in connection with" the collection of a debt, a court should consider whether the communication (1) contains a demand for payment; (2) originates from a debt collector; (3) demands payment or provides a balance due; (4) acknowledges that it is an attempt to collect a debt; (5) threatens consequences if the plaintiff does not pay; (6) was sent in response to an inquiry from the plaintiff; (7) states that the sender is not authorized to accept payment; and (8) is part of a strategy to make payment more likely or was intended to induce the debtor to settle the debt. *Id.*

Wright first submits that this letter should be interpreted as an effort to collect a debt because it includes the following language: "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose." (Def. Mot. Dismiss, Ex. 6).

This language, however, is required by § 1692e(11), and the Sixth Circuit has held that its presence in a written communication does not by itself establish that it is an attempt to collect a debt. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998) ("[T]he mere fact that the letter states . . . that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment.").

In this case, the letter does not expressly demand payment or incorporate a schedule of payments. On the other hand, it does provide a summary of Wright's "Total Due." It also includes a telephone number for her to call in order to make a payment in the event that she should desire to reduce the debt, and it notes the form and manner in which Ocwen Loan prefers to receive payment. The letter further directs Wright to contact an Ocwen Loan employee if she is experiencing financial hardship in order to explore mortgage assistance options and other options to avoid foreclosure. It should be noted that the information contained in the letter relating to payments or payment options is not required by the Real Estate Settlement Procedures Act of 1974. *See* 12 U.S.C. § 2605(b)(3).

The Court will decline to assess all of the requisite factors as to whether this letter was, in reality, an attempt to collect a debt. The fact that the letter (1) contains a total amount due, (2) advises Wright how to obtain a payoff statement, and (3) informs her of the proper form and manner in which to pay Ocwen Loan, is sufficient to set forth the basis for a claim that the subject communication relates to the collection of a debt.

The Court will now seek to determine whether the doctrine of res judicata bars Wright's claim. Ocwen Loan's res judicata argument is based on her prior lawsuit, which was filed on May 18, 2011 and dismissed on March 29, 2012. Wright maintains that the res judicata doctrine is inapplicable here because (1) Litton was not a defendant in the earlier case, (2) the factual

8

allegations which gave rise to this current lawsuit had not occurred when the first lawsuit was filed, and (3) loan validation requests were not an issue in the prior case.

As an initial matter, the Court notes that federal res judicata law governs this issue because the prior judgment at issue was rendered in a federal court. *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971). Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits bars a party from raising the same claim in a subsequent lawsuit. *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). In addition, a party is precluded from litigating a claim that should have been raised in the prior action. *Id.* Claim preclusion will not apply unless the following four elements are established: (1) the prior decision was rendered as a final adjudication on the merits; (2) the present action involves the same parties or their privies; (3) the issues in the present action should have been litigated in the prior action; and (4) both cases involve the same cause of action. *Id.*

First, it should be pointed out that the parties are in agreement that a prior dismissal by a court because of the failure by an aggrieved party to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) constitutes an adjudication on the merits for purposes of claim preclusion. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986). It is also uncontested that Wright was a party in both cases. Although Ocwen Loan was not a party in the earlier action, it is in privity with the HSBC Bank which owns the mortgage. From Ocwen Loan's perspective, this factor is sufficient to satisfy the second prong. Wright, on the other hand, counters that (1) the validation claim in the prior action was against the Trott law firm, and (2) Ocwen Loan was not in privity with Litton or the Trott lawyers. For the reasons that have been set forth hereinafter, the Court need not determine whether second prong is satisfied because the third prong has not been

9

met.

The final element of res judicata is satisfied "if the claims arose out of the same transaction or series of transactions, or [if] the claims arose out of the same core of operative facts." *Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002) (internal quotation marks omitted); *Sanders Confectionery Products, Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) ("Identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action."). Although both lawsuits involve the same loan, that is the extent of their similarity. Wright's claims in the prior action arose out of the mortgage foreclosure proceedings that were initiated by Litton and the subsequent communications sent by the Trott law firm. Wright's complaint in that case was that the communication from Trott did not contain the required validation disclosures. However, Wright's claim here arises out of a required communication from Ocwen Loan after it was assigned Wright's loan from Litton. She contends that this letter contained validation instructions and stated that a request for such relief would receive a response. When Wright made such a request, no response was received. Other than evidence that the same loan is at issue, there does not appear to be any factual connection between the Ocwen Loan letter and the prior mortgage foreclosure that was the source of the prior action.

Finally, Ocwen Loan contends that some courts have held that once a loan is validated, successor debt collectors need not provide a second validation. This argument misses the mark. Wright alleges that the letter promises a response to a request for validation but Ocwen Loan did not respond, which renders the letter misleading under 1692e(10). The complaint does not allege a violation of the validation disclosures requirement of 1692g, and to the extent that Wright raises such a claim in her response, it will be disregarded.

B. <u>Violation of § 1692e(11)</u>

Wright submits that Ocwen Loan violated § 1692e(11) by leaving voice mails on her telephone which failed to inform her of its status as a debt collector. In its motion to dismiss, Ocwen Loan contends that section 1692e(11) does not apply to the voice mails because they were merely follow-up communications to the November 4, 2011 letter, which clearly states that it is a debt collector. Wright, on the other hand, maintains that the statute requires that all "subsequent communications" - including the voice mails - must disclose Ocwen Loan's identity as a debt collector regardless as to whether this fact had been disclosed to her at an earlier time.

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Subsection 11 identifies the following conduct as a violation of this directive:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

First, Ocwen Loan asserts that the Court must determine whether the voice mails were "deceptive" or "misleading" by applying the "least sophisticated debtor standard." *See Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999). According to Ocwen Loan, a less sophisticated consumer should have understood that it and the "Ocwen" in the voice mail were one and the same entity. This argument misses the mark. The "least sophisticated debtor standard" is used by courts to determine whether "language used by a debt collector is deceptive or misleading."

*Grden*, 643 F.3d 169, 172 (6th Cir. 2011). In this case, the issue is not whether the language used by Ocwen Loan was deceptive. Rather, the question is whether the communication by this corporate entity contained the statutorily required disclosures.

In support of its argument that the voice mails were not required to contain disclosures, Ocwen Loan asks this Court to follow the reasoning of the Ninth Circuit in *Pressley v. Capital Credit & Collection Serv.*, 760 F.2d 922 (9th Cir. 1985) (per curiam), which determined that once a debt collector identifies itself as such in an initial communication, it need not repeat the disclosure in any follow-up communications. *Id.* at 925. However, the Sixth Circuit has rejected the *Pressley* approach by holding that subsection 1692e(11) applies to all communications, including follow-up notices. *Frey v. Gangwish*, 970 F.2d 1516, 1520 (6th Cir. 1992) (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26-27 (2d Cir. 1989)). Numerous courts have similarly rejected the reasoning in *Pressley* as being unsound. *See, e.g.*, *Tolention v. Friedman*, 46 F.3d 645, 650 (7th Cir. 1995); *Carroll v. Wolpoff v. Abramsom*, 46 F.2d 459, 461 (4th Cir. 1992); *Pipiles*, 886 F.2d at 26-27. In declining to follow *Pressley*, the *Frey* court remarked that (1) "the plain language of the statute applies to 'all communications,'"[3] without providing an exception for follow-up notices; (2) the requirement that all communications contain the disclosures serves the purpose of the statute by providing the necessary information in the event that the first communication is not received by the

---

[3] The original language of subsection 1692e(11) prohibited "the failure to disclose clearly in *all communications* made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." Pub. L. No. 95-109 § 807, Sept. 20, 1977, 91 Stat 874, 877 (1977) (emphasis added). But, the current language, which was changed in a 1996 amendment, Pub. L. No. 104-208, Title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009-425, does not change the disposition of this analysis. The statute, as currently written, expressly requires disclosure in the initial and subsequent communications. *See Masciarelli v. Richard J. Boudreau & Assocs., LLC*, 529 F. Supp. 2d 183, 186 (D. Mass. 2007).

consumer; and (3) even if repetition of the disclosures fails to serve a discernible purpose, Congress is permitted to adopt a margin of safety in order to meet its remedial goal. *Id.* (citing *Pipiles*, 886 F.2d at 27). Thus, a voice mail must state that the speaker is a debt collector, regardless of whether it follows the receipt of an initial letter. *See Masciarelli v. Richard J. Boudreau & Assocs., LLC*, 529 F. Supp. 2d 183, 186 (D. Mass. 2007); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005).

According to Wright's complaint, she received voice mails and letters from Ocwen Loan following the transmission of her letter of November 30, 2011. She has not provided any other examples of additional communications, except to claim that all of Ocwen Loan's voice mails consisted of the following statements: "This call is from Ocwen [Loan]. Please give us a call back at 1-800-746-2936." Ocwen Loan does not dispute that (1) the voice mails constitute subsequent communications, and (2) its messages did not include any representation that it is a debt collector.

Accordingly, and based upon the facts in this case as well as those published cases that touch upon the subject, Ocwen Loan's motion to dismiss Wright's § 1692e(11) claim is denied.

B.  Violation of § 1692f(1)

Wright claims that Ocwen Loan violated § 1692f(1) of the Fair Debt Collection Practices Act when its transmittal of a letter on November 4, 2011 listed additional costs in the summary of her debts that had been agreed upon by the parties. Ocwen Loan rejects this argument, claiming that the letter does not violate the above-listed statute because (1) it was not an attempt to collect a debt and (2) the collection costs are permitted by the mortgage agreement.

As discussed above, Wright has sufficiently alleged that this letter was an attempt to collect a debt. The Court will therefore consider this argument only to determine if collection costs are

permitted under the terms of the mortgage. The Fair Debt Collection Practices Act prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f. Thus, a debt collector may not collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Ocwen Loan contends that collection costs are permitted by Section 14 of Wright's mortgage which states as follows:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purposes of protecting Lender's interests in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. *In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such a fee*.

(Pl. Resp., Ex. 8, ¶ 14 (emphasis added)). Ocwen Loan also refers to Section 22 of the mortgage, which states, in part, that a "[l]ender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence." *Id.* ¶ 22. Sections 14 and 22 explain that (1) fees that are not mentioned are not to be construed as impermissible; and (2) any costs incurred pursuant to the provisions of the mortgage may be collected. Thus, Wright's mortgage, which is the agreement that created her debt, clearly allows for the inclusion of some additional costs in the assessment of her debt. However, the letter from Ocwen Loan simply characterizes these costs as "collection costs" without further elaboration. Without attempting to identify these "collection costs," it is impossible to determine whether they fall within the categories of costs that are permitted under the terms of the mortgage. Therefore, Ocwen Loan's motion to dismiss this claim will be denied.

IV.

For the reasons that have been discussed above, Ocwen Loan's motion to dismiss Wright's complaint (ECF No. 8) is denied.

IT IS SO ORDERED.

Date: October 3, 2013
                                         s/Julian Abele Cook, Jr.
                                         JULIAN ABELE COOK, JR.
                                         U.S. District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 3, 2013.

                                           s/ Kay Doaks
                                           Case Manager